UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60321-CIV-ROSENBAUM/HUNT

OSCAR GAVIRIA, and WINSTON
WILFREDO SANCHEZ, on their own behalf
and others similarly situated,

      Plaintiffs,

v.

MALDONADO BROTHERS, INC., d/b/a Auto
Wax of South Florida, and BRINOLFO
MALDONADO,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on the cross-motions for summary judgment of Defendants Maldonado Brothers and Brinolfo Maldonado [ECF No. 51] and Plaintiffs Oscar Gaviria and Winston Wilfredo Sanchez [ECF No. 53]. The Court has carefully considered the motions, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion for Summary Judgment and grants in part and denies in part Plaintiffs' Motion for Summary Judgment.

## I. Introduction

Plaintiffs Oscar Gaviria and Winston Wilfredo Sanchez bring claims on behalf of themselves and all other similarly situated individuals for unpaid overtime compensation and recovery of

minimum wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), (Counts I and II), recovery of minimum wages under state law (Count III), and declaratory relief (Count IV). ECF No. 45. The claims arise out of Plaintiffs' employment with Defendants as car washers. *See* ECF Nos. 52 at 1, 2, ¶¶ 1, 7; 56 at 1, 2, ¶¶ 1, 7. The parties move for summary judgment on three specific issues: (1) whether Defendants are a covered enterprise under the FLSA, (2) whether individual Defendant Brinolfo Maldonado was an "employer" within the meaning of the FLSA, and (3) whether Plaintiffs were employees under the FLSA or, instead, independent contractors. ECF Nos. 51; 53.

## II. Material Facts

Defendant Maldonado Brothers, Inc. ("Maldonado Brothers"), was a corporation that provided vehicle-cleaning services to car dealerships in South Florida. ECF No. 52-1 at 2, ¶ 4. Defendant Brinolfo Maldonado founded Maldonado Brothers in 2007 and acted as the corporate president until he decided to dissolve the corporation in January 2013. ECF No. 54-3 at 14:25-15:20. In addition to the vehicle-cleaning services, Maldonado engaged in the export of used clothing to the Dominican Republic as part of Maldonado Brothers, but no other Maldonado Brothers employee participated in these operations. *Id.* at 10:6-11:21.

Plaintiffs were employed at Maldonado Brothers as car washers until the corporation ceased operations in 2013. *Id.* at 8:11-:15. Defendants did not operate brick-and-mortar locations but, rather, washed vehicles at five different car dealerships throughout South Florida. *Id.* at 9:12-10:5, 42:13-:17, 51:1-:8. Plaintiffs' employment was comprised of washing cars for Maldonado Brothers at Acura, Toyota, and Audi dealerships. *See id.* at 49:15-:19, 50:12-:25. As such, many of the cars washed by Plaintiffs were not manufactured in Florida, or even the United States. *Id.* at 49:6-:14.

Defendants provided necessary products such as car-wash soap and all-purpose cleaner to Plaintiffs so that they could clean the vehicles. *Id.* at 19:17-21:13. Maldonado attests that, while Maldonado Brothers provided chemicals and cleaning supplies to the car washers, the car washers themselves were required to provide their own cleaning tools, such as brushes and buffers. ECF No. 52-1 at 2, ¶ 10.

Although he was President of the company, Maldonado did not directly supervise the employees but, instead, delegated the task to several hired supervisors. ECF Nos. 52-1 at 2, ¶¶ 13-21; 54-3 at 42:1-:8, 51:10-52:1. The supervisors rotated among the five washing locations. ECF No. 54-3 at 42:13-:24. While Maldonado maintained the power to hire and fire his supervisors, he delegated the power to hire and fire individual car washers to these supervisors. ECF Nos. 52-1 at 1-2, ¶¶ 12, 13, 18; 54-3 at 52:2-:18. The supervisors determined how much to pay the car washers and reported to Maldonado the hours worked by each car washer, and Maldonado would then issue salary checks to the supervisors to deliver to the car washers. ECF No. 54-3 at 24:17-25:22. Moreover, Maldonado attests that he did not personally visit the work sites regularly, but left such matters in the hands of his supervisors. ECF No. 54-3 at 65:5-:17.

Maldonado maintains that while the supervisors were hired as employees of Maldonado Brothers, other individuals, such as the car washers, were instead hired as independent contractors. *Id.* at 34:4-:17, 52:12-:15. Sanchez and Gaviria signed forms declaring that they were independent contractors on July 1, 2011, and February 10, 2012, respectively, prior to the termination of their employment or the commencement of the instant matter. ECF No. 52-5 at 2, 3.

### III.  Summary Judgment Standard

"Summary judgment procedure is properly regarded, not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819,

825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## IV.  Analysis

The FLSA generally "requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Service, Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010). Plaintiffs filed their Complaint for unpaid overtime and minimum wages, and Defendants now move for summary judgment on two points: (1) that Defendants' business cannot qualify for the FLSA's enterprise coverage, and (2) that individual Defendant Maldonado is not an "employer," so he is not liable under the FLSA. ECF No. 51. Plaintiffs counter-move for summary judgment, contesting Defendants' two arguments and, in addition, requesting the Court to find that Plaintiffs are "employees" and not independent contractors under the FLSA. ECF No. 53.

## A. FLSA Enterprise Coverage

To establish a claim for unpaid overtime and minimum wages under the FLSA, a plaintiff employee must establish one of two types of coverage under the Act: (1) "enterprise coverage," which applies to the defendant employer, or (2) "individual coverage," which applies to the plaintiff employee.[1] *Martinez v. Palace*, 414 F. App'x 243, 244-45 (11th Cir. 2011) (citing 29 U.S.C. §§ 206(a), 207(a)(1)); *see also Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). An employer falls within the FLSA's enterprise coverage if it meets two requirements: (1) it "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A). Federal income tax returns indicate that Maldonado Brothers had annual gross sales in excess of $500,000 in 2010 and 2011, and the parties do not dispute that Maldonado Brothers meets the gross-sales prong of enterprise coverage. *See* ECF Nos. 52-1; 52-2.

But the parties disagree as to whether Defendants meet the first prong of the enterprise-coverage test. To clarify, an enterprise may qualify for coverage in three manners: by having employees (1) engaged in commerce, (2) engaged in the production of goods for commerce, or (3) handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i).

---

[1] The Eleventh Circuit has instructed that, even though the issue of FLSA coverage can be analyzed as a jurisdictional question, FLSA coverage is properly analyzed under the summary-judgment standard of Rule 56, Fed. R. Civ. P., and not the Rule 12(b)(1) standard for challenges to subject-matter jurisdiction, because FLSA coverage is intertwined with the merits of a plaintiff's claim. *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 883 (11th Cir. 2008).

Plaintiffs argue that Defendants meet the enterprise-coverage test by virtue of their exporting of used clothing to the Dominican Republic. But, significantly, only Maldonado and no other employee engaged in the exporting operations. ECF 54-3 at 11:1-:21. The language of the FLSA uses the plural form "employees" in the phrase "employees engaged in commerce," implying that more than one employee must be engaged in commerce in order to meet the statutory definition of enterprise coverage. 29 U.S.C. § 203(s)(1)(A)(i). The Code of Federal Regulations further clarifies,

> An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling or otherwise working on goods that have been moved in or produced for commerce by any person, if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it regularly and recurrently has *at least two or more employees* engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only on isolated or sporadic occasions will not meet this condition.

29 C.F.R. § 779.238 (emphasis added). Thus, "a single employee who is directly engaged in commerce is not enough." *Quezada v. Sante Shipping Lines, Inc.*, No. 11-23246, 2013 WL 1334516, at *6 (S.D. Fla. Mar. 29, 2013); *see also Polycarpe*, 616 F.3d at 1226 n.7 (11th Cir. 2010) (citing and following text of 29 C.F.R. § 779.238); *Scott v. K.W. Max Investments, Inc.*, 256 F. App'x 244, 248 (11th Cir. 2007) (same). Thus, because only one employee of Maldonado Brothers engages in these export operations, the export operations, by themselves, cannot form a basis for enterprise coverage.

Plaintiffs next argue that Defendants are covered under the FLSA because they have employees who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce. This third method of meeting enterprise coverage was added by the 1961 amendments to the FLSA in order to reach "retail and service establishments whose businesses were

otherwise local in character."[2] *Diaz v. Jaguar Restaurant Group, LLC.*, 649 F. Supp. 2d 1343, 1348-49 (S.D. Fla. 2009) (citing *Dunlop v. Industrial America Corp.*, 516 F.2d 498, 500-01 (5th Cir. 1975)).

The handling clause, as it is often referred to, creates an independent basis for coverage under the FLSA. *See Polycarpe*, 616 F.3d at 1221 (citing Pub. L. No. 93-259). The clause states that an enterprise meets the first prong if it has employees that handle, sell, or work on "good or materials" that are moved in or produced for commerce. 29 U.S.C. § 203(s)(1)(A)(i). "Goods" are specifically defined in the statute as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof." 29 U.S.C. § 203(i). But the definition expressly excludes "goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." *Id.*

---

[2] Plaintiffs invite the Court to read the first prong of the enterprise-coverage test out of the statute by assuming that, given the "the accessibility of commerce today," any business that meets the gross-sales prong also meets the commerce prong of the test. ECF No. 53 at 4. In support of this notion, Plaintiffs cite *Galdames v. N & D Investment Corp.*, 2008 WL 4372889 (S.D. Fla. Sep. 24, 2008). Though the *Galdames* Court did comment, in an unpublished order, that "it is notable how many courts . . . have concluded that virtually any enterprise that meets the statutory annual gross sales requirement is subject to the FLSA," *Galdames*, 2008 WL 4372889, at *5, the court clarified in a subsequent order that the court itself "did not adopt the expansive view that virtually any enterprise meeting the statutory annual gross sales requirement is subject to the FLSA." *Galdames v. N & D Inv. Corp.*, 2010 WL 1330000, at *3 (S.D. Fla. Mar. 29, 2010). Contrary to Plaintiffs' assertion, meeting the gross-sales prong alone is not sufficient to qualify for enterprise coverage. *See Polycarpe*, 616 F.3d at 1227 ("not every employer that meets the $500,000 sales threshold must be subject to the FLSA"). Otherwise, the first prong of the enterprise-coverage test would be meaningless. "A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage." *United States v. Forey-Quintero*, 626 F.3d 1323, 1327 (11th Cir. 2010) (quoting *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991)).

Here, Plaintiffs make a variety of arguments as to why enterprise coverage applies. Because the Court agrees with one of the proposed bases for enterprise coverage, the Court does not explore alternative bases. In particular, Plaintiffs argue that Defendants are covered as an enterprise under the FLSA because all of the cars that the employees washed moved in and were produced in commerce. ECF No. 53 at 5-6. The record indicates that no cars are built in the state of Florida, so the vehicles moved in and were produced in interstate commerce in order to arrive at the South Florida car dealerships. ECF No. 54-4 at 13:22-:25.

The next part of the inquiry is whether the employee's washing of cars can be considered "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(i). Defendants argue that the vehicles are neither goods nor materials in the context of Defendants' business operations, and thus cannot form a basis for enterprise coverage. ECF No. 58 at 7-9. In support, Defendants assert that the vehicles cannot be considered materials of Defendants' business because they are not "tools or other articles necessary for doing or making something." *Polycarpe*, 616 F.3d at 1223-24. In addition, Defendants contend that vehicles cannot be considered "goods" either because Defendants do not sell or rent the vehicles, "nor were they the object of any business transaction of Defendants who provided only services to its business customers." ECF No. 58 at 8. Defendants cite *Polycarpe v. E & S Landscaping Service, Inc.*, 821 F. Supp. 2d 1302 (S.D. Fla. 2011), for the notion that vehicles are not always "goods" under the FLSA, and whether a vehicle qualifies as a "good" or a "material" depends upon the context of its use by the employer. *Id.* at 1306-07.

Though Defendants argue that vehicles cannot be considered goods in the context of their business operations because they are not rented or sold, the text of the FLSA makes clear that

enterprise coverage is found where employees ""handl[e], sell[], or otherwise work[] on goods." 29 U.S.C. § 203(s)(1)(A)(i). Thus, the selling of goods is not a necessary prerequisite for enterprise coverage because "handling" or "otherwise working on" goods can also form an independent basis for FLSA coverage. *See Polycarpe*, 616 F.3d at 1221 (use of the word "or" creates an independent basis for satisfying requirements of a statute).

The fact that none of the vehicles on which Plaintiffs worked were produced in Florida indicates that the vehicles were produced out-of-state for commerce and subsequently moved in commerce to Florida. Moreover, Plaintiffs washed the vehicles for the car dealers before the vehicles reached the ultimate consumer. ECF No. 54-3 at 9:12-10:5, 51:1-:8. Because Defendants' employees handled or otherwise worked on these vehicles that had been moved in and produced in commerce, Defendants meet the requirements of enterprise coverage under the FLSA. The purely local nature of Defendants' services is not detrimental to Plaintiffs' claim of enterprise coverage under the handling clause of the FLSA. *See Polycarpe*, 616 F.3d at 1220 (citing *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 501 (5th Cir. 1975)) (the 1961 amendment adding the handling clause to the FLSA "allowed the FLSA potentially to reach retail and service businesses that were otherwise locally focused."). Thus, Defendants are an enterprise covered by the FLSA, and Plaintiffs are entitled to summary judgment on this issue.

### B. Is Defendant Maldonado an "Employer" for FLSA Purposes?

The Court now turns to whether Plaintiffs can sustain a claim under the FLSA against Defendant Maldonado in his individual capacity. The FLSA defines "employer" as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). While employers are generally shielded by the corporate form from personal

liability, the Eleventh Circuit has held that "the FLSA contemplates that a covered employee may file suit directly against an employer that fails to pay him the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)). Therefore, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637-38 (11th Cir. 1986) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

To be found individually liable, the Eleventh Circuit requires an officer to "either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel*, 803 F.2d at 638, *cited with approval in Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013); *see also Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008). Control does not need to be continuous, but instead it must be "both substantial and related to the company's FLSA obligations." *Lamonica v*, 711 F.3d at 1314. The Eleventh Circuit in *Lamonica* further noted that the "primary concern is the supervisor's role in causing the FLSA violation, and [that] it is possible for a supervisor to exercise enough control to play a substantial role in causing the violation," even though the supervisor may work only occasionally. *Id.*

The facts of the instant case reveal that although Defendant Maldonado was president and one-hundred-percent owner of the carwash operations during the relevant period, he delegated a majority of his responsibilities to his supervisors. ECF Nos. 52-1 at 2, ¶¶ 13-21; 54-3 at 42:1-:8,

51:10-52:1. In turn, the supervisors ran the car washes and were responsible for hiring car washers, setting schedules, agreeing upon their wages, and paying them accordingly. ECF Nos. 52-1 at 2, ¶¶ 20, 21; 54-3 at 24:17-25:22, 42:1-:8, 52:12-:15. Defendant Maldonado claims not even to have been aware of the hours of operation, stating that he left such matters to his hired supervisors. ECF No. 54-3 at 15:21-16:5. According to Maldonado, his supervisors would report the money owed to each car washer, at which point Maldonado would draft a check for that amount. *Id.* at 25:8-:22. Maldonado was indeed responsible for paying employees, but he was not the individual who collected and monitored car washers' hours. *Id.* at 26:4-:12. This aspect of the operation was left to the supervisors. *Id.* at 25:8-:22.

Although Maldonado wrote the checks, it was the supervisors, and not Maldonado, who determined the amount that would be disbursed to each employee as salary. Furthermore, Maldonado's testimony indicates that he was neither "involved in the day-to-day operation" nor had "direct responsibility for the supervision of the employee[s]." *See Patel*, 803 F.2d at 638. As a result of these undisputed facts and the legal conclusions they dictate, summary judgment on this point must be granted in favor of Defendants. Individual Defendant Brinolfo Maldonado is not liable for any of the alleged FLSA violations.[3]

### C. Whether Plaintiffs are "Employees" or Independent Contractors

Plaintiffs move for summary judgment on the issue of whether they are employees or independent contractors of Maldonado Brothers. ECF No. 53 at 7-9. The provisions of the FLSA apply only to "employees," defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). But this broad definition does not "bring 'independent contractors' within the FLSA's

---

[3] Whether any violations of the FLSA in fact occurred is an issue not placed before the Court in the instant Motions.

ambit." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947)); *see also Murray v. Playmaker Services, LLC*, 512 F. Supp. 2d 1273, 1276 (S.D. Fla. 2007) ("The FLSA does not apply to independent contractors.").

In order to ascertain whether an individual is an "'employee' or an 'independent contractor,' courts inquire into the 'economic reality' of the relationship between the alleged employee and the employer and 'whether that relationship demonstrates dependence.'" *Scantland*, 721 F.3d at 1311 (citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). Courts have elucidated various factors to serve as guidelines, but the inquiry essentially focuses on six:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312. These factors are not intended to be determinant but, rather, are "aids . . . used to gauge the degree of dependence of alleged employees on the business with which they are connected. . . . More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are

connected that they come within the protection of the FLSA." *Id.* (quoting *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1983)).

As to the first factor, it is clear that Defendants exercised control over Plaintiffs "such that they did not stand as 'separate economic entities' who were 'in business for themselves.'" *Scantland*, 721 F.3d at 1313 (quoting *Usery*, 527 F.2d at 1312-13). While Plaintiffs seem to have not adhered to a rigid schedule, the supervisors did manage the work that they performed on any given day. Plaintiffs' supervisors set the hours that the car wash was open, set the Plaintiffs' wages, and participated in overall monitoring of their work. ECF No. 54-3 at 25:2- 26:8.

Regarding the second factor, Plaintiffs had very little opportunity for profit or loss based on their managerial skills. Plaintiffs were compensated hourly and nothing in the record indicates that they could take on more responsibility or more work based upon their own managerial initiative. *See Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006) (suggesting that payment by the hour cuts against a finding that a plaintiff's opportunity for profit or loss depends upon his managerial skill). Like the cable technicians in *Scantland*, Plaintiffs' "ability to earn additional income through their own initiative was limited." *Scantland*, 721 F.3d at 1317.

In addition, viewing the evidence in a light most favorable to Defendants, Plaintiffs did not purchase the essential materials required for performing the job. Even if Maldonado's affidavit attests that the Plaintiffs had to provide their own cleaning tools, Maldonado's deposition indicates that Defendants purchased, at the very least, the cleaning agents necessary to perform the car-cleaning services. ECF Nos. 52-1 at 1, ¶ 10; 54-3 at 19:17-21:13. Moreover, Maldonado attests that the service provided by the car washers requires no special skills to complete. ECF No. 53-4 at 30:23-:25. Thus, the fourth and fifth factors also weigh against a finding that Plaintiffs were

independent contractors.

The final factor also weighs in favor of finding an employer-employee relationship. Although Maldonado maintains that the work performed by Plaintiffs was not an integral part of his business, it is incontrovertible that it was. *See id.* at 31:1-:22. Without the car washers that Defendants label as "independent contractors," Maldonado Brothers would be a car-washing business made up entirely of supervisors but no car washers. It belies logic to claim that a company whose sole purpose—aside from incidental used-clothing export operations—was to provide car-washing services can exist without those individuals that actually wash the cars. Defendants, therefore, cannot rely on any of the six factors to assert that Plaintiffs were independent contractors.

Defendants instead proffer declarations that both Plaintiffs signed during the course of their employment that state that they are independent contractors. ECF No. 52-5. But these declarations were signed for the apparent intent of declaring that Plaintiffs were independent contractors for tax or insurance purposes and do not control the legal question of whether Plaintiffs are independent contractors under the FLSA. *See Rutherford Food*, 331 U.S. at 728 ("When the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]"). The economic reality of the situation shows that Plaintiffs are not independent contractors but, instead, "dependent upon the business to which they render service." *Bartels*, 332 U.S. at 130. Summary judgment thus must be entered in favor of Plaintiffs on this issue because Plaintiffs are employees protected by the FLSA.

## V. Conclusion

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [ECF No. 51] is **GRANTED IN PART and DENIED IN PART,** consistent with this Order;

2. Plaintiffs' Motion for Summary Judgment [ECF No. 53] is **GRANTED IN PART and DENIED IN PART,** consistent with this Order;

3. Defendant Maldonado Brothers, Inc., is an "enterprise engaged in commerce or in the production of goods for commerce" under the FLSA.

4. Defendant Brinolfo Maldonado is not liable for Plaintiffs' claims brought under the FLSA;

5. Plaintiffs are "employees" under the FLSA.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 31st day of March 2014.

*[signature]*
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record